S. Herbert WAREHEIM

v.

Abraham RIBICOFF, Secretary of Health, Education and Welfare.

Civ. A. No. 11746.

United States District Court
D. Maryland,
Civil Division.

May 5, 1961.

Paul Feeley, Baltimore, Md., Frank H. Newell, III, Towson, Md., for plaintiff.

**534**

Joseph D. Tydings, U. S. Atty., Carl J. Lorenz, Jr., Asst. U. S. Atty., Baltimore, Md., for defendant.

CHESNUT, District Judge.

This is an appeal under 42 U.S.C.A. § 405(g) from a final adverse decision of the Secretary of Health, Education and Welfare against the claimant under the Social Security Act relating to old age and survivors insurance.

■ The appellant, Wareheim, filed an application for the beginning of disability benefits under 42 U.S.C.A. § 423, and also separately an application for a disability period (the so-called disability freeze) under § 416(i). This court may affirm, reverse or remand, based on its determination from the record considered as a whole. The test is whether the conclusion of the Referee, affirmed by Appeals Council, is supported by substantial evidence.

The applicable law in this type of case is now well established by prior judicial decisions in this and many other district courts. Comparatively recently I have written opinions in two such cases, one, Stitely v. Fleming, D.C., 178 F.Supp. 357, in which the judgment of the Referee was affirmed, and Lease v. Fleming, D.C., 178 F.Supp. 169, in which the decision of the Referee was reversed. Both cases were decided November 6, 1959. No appeal was taken in either case. I think it unnecessary to repeat here a statement of the now well established applicable law. Each case depends upon its own particular facts and circumstances as shown by the transcript of the record in the case.

The claimant, S. Herbert Wareheim, born January 14, 1898, now living at Pikesville, Baltimore County, Maryland received a high school education and one year of college. For eighteen years prior to January 9, 1957, when he says he first discontinued work, he had been employed as a solicitor or a "debit" collector for the Monumental Life Insurance Company of Baltimore. At that time he was suffering from a kidney stone; he consulted his personal physician, Dr. Scalia, who discovered on examination that he had some heart impairment and advised him to discontinue work. He complained of some shortness of breath and in his work of collecting periodic insurance premium payments he found discomfort from climbing stairs.

On May 24, 1957 he filed his first application for insurance benefits based on disability and later on August 27, 1957 filed another claim for a disability period above mentioned. His claim was rejected by the Bureau and subsequently he asked for a hearing, which was held by the Referee. The latter concluded, after a lengthy personal hearing of the claimant and the exhibits filed with the transcript of the hearing, that he was not entitled to benefits on either of the claims. In the meantime the claimant had further been medically examined by a Dr. Townshend at the request of the Social Security Administration. The medical findings of the two doctors are much to the same effect. Both found that the claimant had some heart ailment classed by them as "functional condition Class 2", which denotes a slight limitation of physical activity. (See transcript pp. 69 and 77(c)). This means, as I interpret the transcript, that the claimant's medical condition was such that he was not able to sustain long continued activity; but could perform sedentary clerical work for about half time, say probably four hours a day.

■ In the Referee's summary of the facts found at the hearing, he said with respect to the claimant's recent activities over the period of two years, January 1957 to May 1959:

"The medical evidence establishes that although the claimant has had two episodes of congestive failure, his heart has responded to therapy very well, and there is no present evidence of decompensation. The evidence does not establish that the claimant has angina. The extensive activities of the claimant in driving his automobile, working around the house, typ-

ing, handling certain accounts for more than 40 local Lions Clubs, travelling to and attending conventions in Chicago and Atlantic City, travelling to Nova Scotia, all tend to indicate that the claimant, notwithstanding his impairments, has been left with ample physical and mental residual capacity to enable him to engage in sedentary but nevertheless substantial gainful activity."

It appears from the transcript that by reason of his long prior employment by the Monumental Life Insurance Company he had contributed from his wages substantial amounts in accumulation of pension fund benefits and that on discontinuing work for them in 1957 he received a monthly pension of about $42. He applied to his superior official for clerical work in the home office of the Company but learned that it was not available for the soliciting agents of the Company; but nevertheless it was told him by the official that the latter would secure for him clerical work in a bank. However, the claimant declined this offer because employment in a bank would not enable him to continue to accumulate and increase his pension benefits from the Monumental based on years of service. (see transcript, p. 4) It does not appear from the transcript that the claimant has ever tried to obtain partial employment of clerical work of any kind. The claimant owns his own home and has at least an honorary occupation as secretary of the Lions Clubs in and around Baltimore County entailing a considerable amount of clerical work, and makes trips to distant places such as Chicago and Nova Scotia by automobile driven principally or wholly by a young relative. He owns and drives his own automobile and averages about 3,000 miles a year in its use. His very substantial education at school and further practical experience in life insurance agency activities well qualify him for clerical work. And the finding of the Referee is to the effect that his physical impairment, medically ascertained, is not of such severity as will prevent his moderate activity in sedentary occupations. He also has been employed in making out comparatively simple federal income tax returns for various individuals for modest compensation.

In my opinion it is quite significant that the claimant declined to accept the offer of his employer to obtain employment for him in a bank; and that he has since January 9, 1957 made no effort on his own part to obtain partial employment for which he is fitted by education and experience. Outside of the heart condition referred to he seems to have no substantial physical impairment of body or mind, and is alert and intelligent.

In a very recently reported case in the Second Circuit, Adams v. Fleming, 1960, 276 F.2d 901, at page 904, it was aptly said by Circuit Judge Moore:

"The intent of Congress as expressed in the statute itself and in the legislative history surely was not to provide disability benefits for all who had some physical ill and chose to retire without making any effort to obtain any work."

I conclude that the claimant is not presently entitled to the benefits that he claims; however, it appears that he is still qualified, in view of his past employment record, to participate in the benefits of Social Security when he reaches the age of 65, or possibly 62 if pending proposed legislation is passed by Congress, and it further appears that if before then he becomes so much further physically disabled that he is unable to engage in gainful employment, he will then be at liberty to again apply for present benefits.

After carefully considering the whole transcript of the evidence in the case, I agree with the Referee's conclusion that the claimant has not established that he is unable to engage in any substantial gainful activity. Accordingly, it is this 5th day of May, 1961 Ordered that the final decision of the Secretary be and the same is hereby affirmed.