**Roy GLENN, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare of the United States of America, Defendant.**

Civ. A. No. 5650.

United States District Court
E. D. Oklahoma.

May 10, 1965.

Clyde Stipe, Stipe, Gossett & Stipe, McAlester, Okl., for plaintiff.

Edwin Langley, U. S. Atty., Muskogee, Okl., for defendant.

DAUGHERTY, District Judge.

The plaintiff in this action seeks a review of the decision of the defendant Secretary denying his application to establish a period of disability and for monthly disability insurance benefits. The defendant filed an Answer and a Motion for Summary Judgment with a brief in support thereof, to which the plaintiff has filed a response.

On August 24, 1962, the plaintiff filed an application to establish a period of disability and for disability insurance benefits pursuant to Sections 416(i) and 423 of the Social Security Act, as amended. The plaintiff alleges that he first became disabled to the extent that he was precluded from engaging in substantial work in May, 1962, because of arthritis of the spine. The application was initially denied on March 1, 1963.

The plaintiff then filed a request for a hearing before a hearing examiner. The hearing examiner found that the plaintiff was not entitled to the benefits for which he had applied.

■ The issue is whether there is substantial evidence to support the decision of the Secretary. The findings of fact, and conclusions drawn therefrom, made by the Hearing Examiner are binding on this Court if they are supported by substantial evidence. Aubry v. Celebrezze, D.C.La.1963, 213 F.Supp. 767.

■ The claimant's alleged disability must have been in existence on or before November 24, 1962, the expiration date of the effective period of the application.

The medical evidence shows that the claimant underwent a laminectomy at the L3–L4 level of the spine in 1954, and he has complained of difficulty with his back since then. He worked in a coal mine and in construction work until May 1962, when his condition allegedly progressed to the extent that he was no longer able to work.

The pertinent medical evidence is chronologically summarized as follows:

8/16/62 Medical Report—Dr. Brown. Spinal x-rays showed very slight arthritic changes in the cervical and dorsal regions of the spine with no other abnormalities. The lumbosacral spine showed moderate arthritic changes, with slight scoliosis to the right, and what was apparently an old healed compression fracture deformity of the L3 body. No other abnormalities were reported.

8/28/62 Medical Social Summary "* * * in view of the medical information available and our observations, Mr. Glenn is disabled to earn a livelihood for his family. * * *"

8/30/62 Medical Report—Dr. W. P. Lerblance, Jr. Condition not static; will probably get worse; not ex-

pected to get better now. Restriction on all physical activities. "This patient is now totally and permanently disabled for doing ordinary labor—Turned down at mines where previously employed. Unable to hold down any work—condition continues to get worse."

10/26/62 Medical Report—Dr. W. S. Dandridge.

Reported that the claimant stood erect and was nourished and developed. Walked without difficulty although right lower extremity shorter than left lower extremity. No limitation of movement in the lumbar or lumbosacral areas of the spine.

12/17/62 Medical Report—Dr. W. S. Dandridge.

"These films (referring to x-rays) disclosed hypertrophic arthritic changes throughout the lumbar area with lateral spur formation and anterior spur formation on the 4th, 5th, and 6th lumbar vertebrae. There is evidence of a laminectomy having been performed between L4–L5 area."

3/6/63 Medical Report—Dr. D. C. Ramsey.

"In summary, this patient has a definite vocational handicap because of the history of severe back injuries and disc surgery and the presence of osteoarthritic changes in the cervical spine and lumbar spine. The difference in leg lengths is difficult to evaluate as, at the present time, his leg and hip symptoms are on the opposite side from the increased leg length. * * * There is no evidence of rheumatoid activity, and I feel that with appropriate conservative ther-

apy, consisting of an adequate lumbosacral support and diligent home care and exercises—for which he was given instructions, the patient should be able to perform moderate activity and vocational training. He should not attempt to do extremely heavy activity involving prolonged walking, standing, and heavy lifting."

5/6/63 Medical Report—Dr. L. N. Dakil.

"It is my opinion that this man is totally disabled for any type of manual labor because of the weakness and stiffness of his back, and the arthritic changes of his back. The pain comes on after slight straining or lifting."

5/8/63 Medical Report—Dr. W. P. Lerblance, Jr.

"This patient is mentally clear, education limited. There is a 60% limited motion to the back. The left elbow has limited flexion. The skeletal muscle of the arms and legs appear to have less than normal tonicity. The right leg is ¾ inch longer than the left. X-ray examination reveals arthritic changes of the spine, more so the cervical and lumbosacral. Conclusion: It is my impression that this man is now totally and permanently disable, insofar as doing ordinary manual labor."

8/10/63 Medical Report—Dr. E. H. Shuller.

The claimant had marked limitation of motion in the back with marked pain upon manipulation. He was unable to stoop or bend properly, and he walked in a stooped over position. There was marked pain to palpation

around the knee, which was thought to indicate the presence of arthritis. "It is my opinion that this man is physically disabled, that he is educationally not qualified for training for other types of work and that he is markedly handicapped so far as taking care of his family because of these conditions."

1/11/64 Consultative examination— Dr. Port Johnson.
Spinal x-rays were essentially the same as interpreted in the previous medical reports. Clinical examination of the remaining joints failed to reveal any limitation of motion, crepitation, swelling, localized muscular atrophy or other evidence of arthritis.

■ It is not disputed that the determination of this review is to be based on the record transmitted here by the Secretary, considered as a whole. Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776; Lease v. Fleming, D.C.D.Md.1959, 178 F.Supp. 169.

The test for disability consists principally of two parts: (1) a determination of the extent of the physical or mental impairment, and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity. 42 U.S.C.A. §§ 416 and 423.

■ After reading and considering the whole of the record, the Court finds that the Hearing Examiner's conclusions are not supported by substantial evidence. It is obvious that the findings of the Examiner are based almost exclusively on the medical report of Dr. Port Johnson. However, the Court does not find that Dr. Johnson's report is sufficient to constitute substantial evidence in the light of the other medical evidence and other facts reflected in the transcript as a whole. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Universal

Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

In the present case the plaintiff is a man who has supported himself and his family primarily by doing farm labor or by working as a cutting machine operator in the coal mines. After he was laid off from the coal mines in 1960, he worked in construction work doing manual labor, and for a few months in 1962 he poured concrete.

The plaintiff is 53 years old. He has no formal education and is unable to read and write. He lies down about three-fourths of every day and experiences difficulty walking due to pain. The plaintiff testified that at times he cannot arise from bed in the morning or sit to eat. (Exhibit AC–2)

■ It must be remembered that the Social Security Act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities he has. Dunn v. Folsom, D.C.W.D.Ark.1958, 166 F.Supp. 44. Therefore, the background, lack of education, training and age of the particular applicant become pertinent.

A vocational witness testified that the claimant could perform some jobs. These jobs included dishwasher, custodial work, selling parts in automobile salvage yard, tractor operator, seed-cleaner operator, scrap-bacon packer and an awning spreader. In rebuttal, another vocational witness testified that there had never been a request to the Oklahoma Employment Agency for such jobs, or that the jobs did not exist to his knowledge, and that the claimant did not have the necessary physical qualifications for the jobs.

Dr. W. P. Lerblance, Jr., who has treated the plaintiff for a period of 16 years, classified him as totally and permanently disabled for doing ordinary labor. Dr. L. N. Dakil reported that the plaintiff is totally disabled for any type of manual labor. Dr. E. H. Shuller, medical examiner for the mining company, refused to

permit the plaintiff to be re-employed at the mines and expressed the opinion that the plaintiff is physically disabled and educationally not qualified for training for other types of work; that he is markedly handicapped so far as taking care of his family because of these conditions.

The only evidence in support of the Appeals Council's findings is the medical report of Dr. Johnson, based upon one examination of the plaintiff a year and a half after the plaintiff filed his application. The Appeals Council concluded that Dr. Johnson's report corroborated the report of Dr. Dandridge. But neither Dr. Johnson nor Dr. Dandridge expressed an opinion, based upon their medical examinations, regarding the physical ability of the plaintiff to continue working at his former employment or employment related thereto, which the Appeals Council concluded the plaintiff was able to do.

As heretofore noted, the plaintiff has had difficulty with his back since 1954 as a result of an accident in a coal mine. There is testimony that after an operation for a slipped disc his condition progressed to the point he is no longer able to work. The clinical findings of the doctors and the medical evidence show that the plaintiff's principal impairment concerns osteoarthritis in the cervical and lumosacral areas of the spine and the residuals of the laminectomy. The medical evidence, background, lack of education and training of the plaintiff, as revealed by the record, make it abundantly clear that he is disabled from gaining a livelihood through any activity involving manual labor, the only work he has ever known or been able to do.

There being no substantial evidence to support the Secretary's decision that the plaintiff is not disabled, within the meaning of the Act, that decision must be reversed; the defendant's motion for summary judgment is denied; and this case is remanded to the Secretary with directions that the plaintiff be granted a period of disability and disability insurance benefits in accordance with the views herein expressed.

Counsel for plaintiff will prepare an appropriate judgment herein and submit same to opposing counsel for approval as to form and then to the Court for signature and filing herein.